```
            IN THE UNITED STATES DISTRICT COURT
          FOR THE WESTERN DISTRICT OF PENNSYLVANIA
```

FREDERICK H. BANKS; VAMPIRE NATION;   )
HEXAGON LLC.; HEXAGON RECORDS;         )
              PLAINTIFFS,              )
         v.                            )
3311 EAST CARSON STREET; PAUL HULL;    )   Civil Action No. 04-1771
BRENDAN T. CONWAY; MARY BETH BUCHANAN; )
TIMOTHY PIVNICHNY; JOHN DOE; ERIC STROM; )
DAVID ANDERCHAK; JOHN WISNIEWSKI;      )
CYNTHIA REED EDDY; TORSTEN OVE;        )
JOHNSON & EDDY; PITTSBURGH POST        )
GAZETTE; US POST OFFICE; DEPARTMENT    )          FILED
OF JUSTICE; UNITED STATES OF AMERICA;  )
THOMAS M. HARDIMAN; DAVID CHOBIT;      )        JUL 2 9 2005
J. SNYDER; 950 SECOND AVENUE; COUNTY   )
OF ALLEGHENY, PENNSYLVANIA; RAMON      )   CLERK U.S. DISTRICT COURT
RUSTIN; CALVIN LIGHTFOOT; FRED ROSMEYER; )  WEST. DIST. OF PENNSYLVANIA
ROCKY FOWLER; MARY C. RUBIN; HENNE;    )
ALBERT DEVLIN; AND DAN ONORATO,        )
              DEFENDANTS.              )

## AMENDED COMPLAINT

AND NOW COMES the Plaintiffs, Frederick H. Banks, Vampire Nation, Hexagon LLC., and Hexagon Records who allege for their amended complaint that: The plaintiffs filed Federal Tort Claims in the amount of 75 Billion Dollars against the federal defendants which is hereby incorporated into each and every cause of action in this amended complaint as if fully set forth again;

parties

1. The plaintiffs are Frederick H. Banks, an individual, Vampire Nation, a historical and political band, Hexagon LLC., an organization, and Hexagon Records, an organization ("Plaintiffs").

2. The defendants are 3311 East Carson Street, a commercial building-structure, Paul Hull, an individual and assistant US attorney, Brenden T. Comway, an individual and assistant US attorney, Mary Beth Buchanan, an individual and US attorney, Timothy Pivnichny, an individual and FBI special agent, Eric Strom, an individual and FBI special agent, John Doe, an individual and FBI special agent, David Anderchak, an individual and US postal inspector, John Wisnieski, an individual and US postal inspector, Cynthia Reed Eddy, an individual and attorney with Johnson & Eddy, Torsten

Ove, an individual and reporter for the pittsburgh post gazette, Johnson & Eddy, an organization, Pittsburgh Post Gazette, an organization, US Post Office, an organization, Department of Justice, a government agency, and United States of America, a country ("Defendants"). The defendants acting as investigators, administrators and other implemented personal and official policies and procedures and trickery that violated the plaintiffs constitutional and due process rights and caused damage to the plaintiffs. The defendants further are 950 Second Avenue, a building structure and parking lot, the County Of Allegheny, Pennsylvania, a municipal corporation Ramon Rustin, an individual and Warden of the allegheny county jail, Calvin Lightfoot, an individual and former warden of the allegheny county jail, Fred Rosemeyer, an individual and former interim warden of the allegheny county jail, Mary C. Rubin, an individual and mail room superviso of the allegheny county jail, Rocky Fowler, an individual and mailroom staff worker of the allegheny county jail, Henne, an individual and unit manager of the allegheny county jail, Albert Devlin, an individual and correctional officer of the allegheny county jail, Dan Onorato, an individu and allegheny county chief executive officer, Thomas M. Hardiman, an individual, David Chobit, an individual and law clerk, J. Snyder, an individual and bailiff, ("Defendants"). The defendants implemented procedure at the allegheny county jail and the federal courthouse that caused damage to the plaintiffs. All parties are sued in their individual and governmental capacities respectively. The defendants obstructed the equal and impartial course of justice because of the plaintiffs class based status in pennsylvania as an African American.

2

## IMMUNITY

3. Sovereign, prosecutorial, and qualified immunity and other is waived as the plaintiffs filed Federal Tort Claims against the Defendants who did not answer the claims and thus waived the immunity.

## PART A - INVESTIGATIVE ILLEGALITIES

4. From on or about May 4, 2004 to August 10, 2004 acting in their investigative and procedurial capacities Paul Hull and Mary Beth Buchanan failed to dismiss duplicate superceding indictments leaving the plaintiff Banks in jeopardy since the second superceding indictment charged the same counts with the same victims, elements and wording. One indictment though added forfeiture and sentencing allegations which the Supreme Court in Booker said was improper. On October 14, 2004 the plaintiff was convicted on both indictments a total of 14 duplicate counts a double jeopardy violation. Plaintiff Banks was sentenced to sixty months literally double the time he should have received because of the Booker violation due to the procedurial and investigative actions of the Defendants.

5. Accordingly in another procedurial matter a transaction involving Samantha Belfer of Action Software, said, the plaintiff Banks placed "a box" into US mail matter and that Belfer paid for the box with a $49,999.00 cashiers check. However, Paul Hull issued a special verdict form enhancing the charged amount of $49,999.00 to an amount just under $300,000.00 to infringe on the plaintiff liberty by adding six levels to the plaintiffs sentencing guideline range. Paul Hull investigating and using procedures authorized by Buchanan similary repeated this procedure on counts one and two of each indictment.

6. In a plea agreement authored by Hull and Buchanan the Department of Justice knowingly, maliciously, intentionally and purposely added three more points to the plaintiffs base offense level going from a four to a seven to further deceive and further infringe on liberty for the purpose of nullifying the plaintiffs three points for acceptance of responsibility in further deception by these rogue government agents. This was illegally done in the Defendants

investigative and procedurial roles.

7. On or about October, 2004 while investigating the case against plaintiff Banks, after conferring with Thomas Livingston in two phone conversations and finding that the plaintiff intended to excercise his right to trial by jury, Brendan T. Conway told Livingston that the government will then supercede indict the plaintiff for excercising his right to a trial by jury.

COUNT I-IV - CONSTITUTIONAL VIOLATIONS

8. paragraphs 1 through 7 are hereby incorporated by reference and realledged as if fully set forth again.

9. By subjecting the plaintiffs to the above mentioned investigative procedure and personal, official policies the defendants acting under color of law deprived the plaintiffs of liberty, property, equal protection, due process and the right to be free from cruel and unusual punishment. The defendants acted individually and in a conspiracy together to conflict purposeful injury on the plaintiffs.

10. The defendants actions were knowingly, malicious, intentional, and purposely done and damaged the plaintiffs and as such they are entitled to damages pursuant to the constitution and 42 USC 1983 in the amount of 6,000,000.00 and 42 USC 1985 in the amount of 18,000,000.00 and punative damage in the amount of $125,000,000.00. totaling $149,000,000.00.

part B - FBI illegal search - evidence tampering - deception

11. During 2003 Timothy Pivnichny, John Doe, and Eric Strom performed two warrentless unresonable searches on Banks residence authorized by Paul Hull and Mary Beth Buchanan in their investigative roles. Banks did not give consent for either search and had a legitimate expectation of privacy at his home. The poisones fruits of the searches allowed Pivnichny to gain an illegal conviction against Banks and as a result Banks was damaged in that he lost 60 months of liberty, all of his personal papers and possessions and his stature in the community.

12. During a May 2003 raid of plaintiff Banks residence the defendants under the direction of Pivnichny, Hull and Buchanan, confiscated an Orbit II DVD/CD

burner, later during another raid in September, 2003 they confiscated a Compaq computer, and a Lexmark printer. SHortly there after the Orbit II, Compaq and Lexmark became part of the copyright infringement count in two superceding indictments against Banks. That is Pivnichny commited perjury to the grand jury by telling them Banks used the Orbit II to copy software, the compaq computer to communicate with victims and scan inserts, and the lexmark printer to print color software inserts and a global solutions check that had a color inkjetted signiture.

13. From on or about May 3, 2003, to October 2004 Pivnichny and others made repairs to the Orbit II to cause the Orbit to work and thus altered the outcome of the Judicial proceedings against Banks for the benefit of his career.

14. Unbeknowist to Pivnichny Banks had made two previous calls to the manufacturer of the Orbit, Microboards Technology indicating from 7/11/2002, during the time Pivnichny and Paul Hull told the grand jury Banks was using the Orbit to copy software after their investigation, to May 2003 the month Pivnichny confiscated the Orbit II it did not work. The plaintiffs have the proof which is attached hereto this amended complaint as Exhibits_____ Accordingly Pivnichny demonstrated the Orbit and it worked and Banks was found guilty and lost everything as a result.

15. Timonthy Pivnichny is a con artist against Justice who frequently makes false statements and in this instance crossed the line when he tampered with evidence to gain a criminal conviction againt the plaintiff in his first case as an FBI agent. He enjoyed great pleasure in his deceitful deeds indeed.

16. It was Pivnichny who asserted that Banks used a lexmark e312l printer to print in color, a printer later found to be black and white. It was Pivnichny that demonstrated and Orbit II CD / DVD copier that suddenly worked. However, Banks showed that the machine was broken through manufacturer records before Pivnichny got his hands on it and repaired it when he discovered it was broken. And it was Pivnichny that listed in the Indictment an indictment that went in front of the

5

used in the commission of these crimes a Compaq computer model 1502 US serial# RI37JLTL00i0. However, that was not the computer Banks even owned. Banks acquired the purchase receipt from tech-dept that proves that the Compaq computer he owned was a model 5102 US serial# D70014-747-Bi Exhibit _____.

17. Since the tampering and falsification of records was done by Piunichny at 3311 East Carson Street Pittsburgh PA 15203, also known as FBF Pittsburgh headquaters, Banks seeks civil forfeiture of the building through transfer of the deed to the plaintiffs. The Defendants obstructed the equal and impartial course of Justice because of the Plaintiffs class based status in Pennsylvania as an African American.

### Count V-IX - Constitutional Violations

18. Paragraphs 1 through 17 are hereby incorporated by reference and realledged as if fully set forth again.

19. By subjecting the Plaintiffs to the above cited investigative and administrative procedures, personal and official policies the Defendants acting under the color of law deprived the plaintiffs of constitutional rights, liberty, property, due process, Equal protection, the right to be free from unreasonable searches and seizures, and the right to be free from cruel and unusual punishment. The Defendants acted individually and in a conspiracy together to inflict purposeful injury on the plaintiffs.

20. The defendants actions were knowingly, malicious, intentional, and purposely done and damaged the plaintiffs and as such they are entitled to damages pursuant to the Fourth Amendment, The Constitution and 42 USC 1983 in the amount of $75,000,000.00 and 42 USC 1985 in the amount of $428,000,000.00 and a forfeiture judgment of 3311 East Carson Street, and punative damages in the amount of $4,925,000,000.00 totaling $5,428,000,000.00.

### Part C - Relationship Interference

21. Paragraphs 1 through 20 are hereby incorporated by reference and realleged as if fully set forth again.

22. From on or about May 3, 2003 to October 14, 2004 Cynthia Reed Eddy did corruptly persuade and knowingly engage in misleading conduct toward a person, namely Meredith Bindi, the plaintiffs' fiancee by inducing her to not associate with Frederick Banks knowing that Banks and Bindi were to be married in October. In further corruption with Timothy Piunichny, and Paul Hull, Eddy, Piunichny, and Hull acting as administrat

6

ordered Ms. Bondi to move out of the Plaintiffs residence and at the start of the Plaintiffs trial Eddy did call Pivirnichny to congratulate him on finally giving the Plaintiff what the defendants thought he deserved. Now the tables have turned and it is Eddy who will be made to receive a civil taste of her own medicine! Eddy and the defendants obstructed the equal and impartial course of justice because of the plaintiffs class based status as an African American in Pennsylvania.

### Count XI - Tortious Interference with a Relationship Constitutional violations

23. Paragraphs 1 through 22 are hereby incorporated by reference and realleged as if fully set forth again.

24. Plaintiff Frederick Banks had a relationship with Meredith Bondi and they were engaged and scheduled to be married.

25. The defendants interfered in the relationship and as a result the marriage was called off.

26. The plaintiff forever lost a loved one and the relationship can never be replaced. The defendants actions were knowingly, maliciously, intentionally and purposely done and caused damage to the plaintiffs and as such the plaintiffs are entitled to damages pursuant to the Constitution, common law torts, and 42 USC 1983 in the amount of $100,000,000.00 and 42 USC 1985 for this evil and wanton relationship destruction in this twisted incestuous civil conspiracy and punitive damages in the amount of $750,000,000.00 or totaling $850,000,000.00

### Part D. - Postal Inspectors illegal arrest and searches

27. In June and July of 2004 US Postal Inspectors David Anderchak, and John Wisniewski, conspired as investigators with administrative support from Mary Beth Buchanan, Paul Hull and Brendan T. Conway to perform an illegal arrest of Plaintiff Banks. The arrest was supported by an alleged pickup of a UPS Package which violated 18 USC 3061(b)(1) since postal inspectors are not authorized to make arrests outside of post office matters. Because, obviously UPS is not part of the post office the arrest was illegal and violated the plaintiffs rights to be free from unreasonable searches and seizures. The US attorney and AUSA's "instructed" the illegal arrest even though they knew the inspectors could not legally place Banks under arrest under the Constitution. They also drove the Banks' vehicle from his private drive to do an illegal "inventor

28. Shortly thereafter the inspectors while investigating performed two searches, one of Banks garage and one of his home. Since postal inspectors under 39 USC 603 are not authorized to search garages or houses the search was illegal which the defendants very well knew at the time they committed the illegal acts. No consent to search was given, the arrest and searches

7

were ordered by Brendan Conway, Paul Hull, and Mary Beth Buchanan in their roles as investigators. US Postal inspectors knew by performing the searches they were breaking the law and by arresting Banks they were breaking the law and furthermore estoppel prohibits the continued investigation of Banks but the illegal investigation continues. These acts of illegally searching and seizing Banks and his property was totally unreasonable as Banks had a legitimate expectation of privacy in his private driveway and home and the inspectors performing an investigation had no statutory or constitutional authority to violate Banks rights. The inspectors acted under the color of law to deprive Banks of his constitutional rights and in doing so committed power abuse. As the inspectors lodged Banks into jail without the authority to do so they forged a US marshal prisoner remand document in furtherance of this elaborate civil conspiracy. The defendants obstructed the equal and impartial course of justice because of the plaintiffs' class based status in Pennsylvania as an African American.

Count XII - XV

29. Paragraphs 1 through 28 are hereby incorporated by reference and realleged as if fully set forth again.

30. By subjecting the plaintiffs to the above mentioned constitutional violations which occur because of the defendants personal and official policies the defendants acting under the color of law deprived the plaintiffs of liberty, property, due process, equal protection, the right to be free from unreasonable searches and seizures, and the right to be free from cruel and unusual punishment. The defendants acted individually and in a conspiracy together to inflict purposeful injury on the plaintiffs.

31. The defendants actions were knowingly, malicious, intentional, and purposely done and damaged the plaintiffs and as such they are entitled to damages pursuant to the Fourth Amendment, the Constitution and 42 USC 1983 in the amount of $25,000,000.00 and 42 USC 1985 in the amount of $150,000,000.00 and punitive damages in the amount of $450,000,000, totaling $625,000,000.00.

Part E - Libel Slander Defamation and Misconduct

32. From on or about March 15, 2004 to October 16, 2004 Mary Beth Buchanan, and Paul Hull defamed the plaintiffs character and further soiled the reputation of the plaintiffs by making false statements in a series of press releases, such as Banks was a fraudulent character and one of his "victims" Warren Do of Liesoftware, a Colorado reseller had in good faith given Banks a "business check". The "business check" Do gave Banks was in fact counterfeit and the defendants were well aware of that fact. However, they continued to forward the bogus statements to the media and in particular Torsten Ove and the Pittsburgh Post Gazette who reprinted the releases on at least

8

no freight elevators exist and heavy freight items such as food trays for thousands of inmates must be transported in the elevators several times daily.

62. Each pod has a prep kitchen but the prep kitchens are not used as a result the food is often served cold and the germs from the rodents often make inmates sick. Since during meal times enough juice isn't sent, Defendant Oerlin instead of calling the kitchen for more juice regulates the juice by filling up the plaintiffs cup to just 1/8 of the way full. Since meal trays are only halfway filled with food the arbitrary regulations of the juice causes inmates stomachs to growl from lack of substenance.

63. The tables are rotting out and many do not have covers.

64. The carpeting permeates with dry rotting filth and must be replaced as it is the primary source for killer diseases such as MRSA which frequently kills and permanently damages inmates and officials at the building.

65. Each cell has holes and cracks in the walls ceiling and floors. Tiny disease infected winged bugs, knats, mites and fleas routinely enter the cells through the holes and leave bug bites on inmates. The bugs have infested the jail because the sewer drains are never cleaned and remain clogged which doesnot allow bugs to escape - ie. one way in - no way out.

66. The toilets can only be flushed once or twice an hour and the recycled water therein permits life threatening germs to enter the cells. In Sum, the jail is an eyesore that needs Shut down. The defendants obstructed the equal and impartial courts of Justice because of the plaintiffs class based status in Pennsylvania as an African American inmate.

Count XXV - Constitutional Violations

67. Paragraphs 1 through 66 are hereby incorporated by reference and are realleged as if fully set forth again.

68. By Subjecting Banks to the life threatening hazardous conditions cited above which occur because of the defendants official and personal policies and procedures, the defendants acting under the color of law to deprive Banks of his constitutional rights infringed upon Banks to due process, to be free from cruel and unusual punishment, right to equal treatment and protections, and the rights of a pretrial detainee. The defendants actions in this elaborate civil conspiracy were willful, malicious, knowing, and intentional.

69. Because Banks has been Subjected to these constitutional violations for over 13 months and most likely will be for another 12 months the defendants policies damaged him and he is entitled to damages pursuant to the constitution and 42 USC 1983 in a forfeiture Judgment to transfer ownership and the deed of 950 Second Avenue to Banks and damages pursuant to 42 USC 1985 in the amount of $566,000,000.00, totaling

13

$704,200,000.00.

## Part G - Liberty rogues

70. At all times material Thomas M. Hardiman as individual is sued for his role in this vast and elaborate civil conspiracy that he played in procedural, administrative and investigative matters behind the scenes when he was not sitting legally on the bench as a Judge. Defendant Hardiman continued to make rulings as to

71. 

72. The plaintiffs after he recognized an appearance of bias on February 23, 2005 and eventually recused from the above captioned matter and 04-1776.

73. As a result of the defendants actions the plaintiff lost 60 months of liberty, his personal possessions and his stature in the community.

74. The defendants went brazenly and boldly further to hold Banks on pain of contempt if he did not dismiss his lawful civil Bankruptcy suits which denied him and his creditors property rights and was a matter outside his subject matter jurisdiction. Since no order in the Bankruptcy Court had been returned to appeal to Hardiman from, and as such trumped the Bankruptcy Judge who did have jurisdiction to adjudicate the actions. Defendant Hardiman clearly knew the matters were outside his jurisdiction but continued to perform the illegal actions nontheless.

75. Defendant law clerk David Chebit wrote opinions and rubber stamped court orders effecting Banks livelyhood with Thomas Hardimans signiture. The Defendants went boldly further and simply ignored motions such as Banks motion to proceed pro se in 03-245 (Dec. no. 170) and his motion to dismiss the sentencing allegations that the Supreme Court in Booker stated was improper and used an illegal sentencing verdict against Banks.

76. J. Snyder the bailiff in 03-245 as to Count 5 crossed out the misdemeanor count that the jury had checked after the returned the verdict of guilty to that count. That is the jury simply checked straight down the verdict form without reading it. If the jury would've bothered to read the form they could have realized that there were two parts to Count 5, criminal and misdemeanor which the the jury checked guilty on both. During the read through upon realizing the double jeopardy violation J. Snyder paused then put a line through the misdemeanor copyright infringement guilty verdict. So in essence Defendant Snyder chose what Banks was guilty of not the empanneled jury which violated Banks rights to be tried and convicted of a jury of his peers and put Banks on a literal easter egg hunt for justice.

77. The illegal alteration of the verdict form damaged Banks in that he lost 60 months of liberty because of the calculated cowardly, malicious and wanton actions of the

14

Defendants. The defendants obstructed the equal and impartial course of justice because of the plaintiffs' class based status in Pennsylvania as an African Americans while acting under the color of law to deprive the plaintiffs of constitutional rights utilizing their tazmanian trickery.

### Count XXII - Constitutional Violations

78. Paragraphs 1 through 77 are hereby incorporated by reference and are realleged as if fully set forth again.

79. By subjecting the plaintiffs to the conditions cited above which occur because of the Defendants' official and personal policies and procedures, the defendants acting under the color of law to deprive Banks of his constitutional rights infringed upon Banks' rights to due process, to be free from cruel and unusual punishment, equal protection, and the rights of a pretrial detainee. The defendants actions in this elaborate civil conspiracy were willful, malicious, knowing and intentional.

80. Because Banks has been subjected to the conditions for over 13 months and will be for another 47 months, the defendants policies damaged him and he is entitled to damages pursuant to the constitution and 42 USC 1983 in the amount of $1,000,000,000.00 and damages pursuant to 42 USC 1985 in the amount of $7,000,000,000.00 totaling $8,000,000,000.00.

### Injunctive Relief

81. Paragraphs 1 through 80 are hereby incorporated by reference as if fully set forth again.

82. The plaintiffs' seek injunctive relief against the Defendants to end the violations because there is a real threat the actions will continue since the plaintiff is an incarcerated African American under the domination and control of, as shown reckless cheats of the fair and impartial administration of equal justice under the laws of the Constitution of the United States of America and the violations continue again and again with no end in site.

WHEREFORE, the plaintiffs respectfully demand that judgment be entered in the amount of $19,844,400,000.00, a forfeiture judgment of the properties known as 3311 East Carson Street and 950 Second Avenue and injunctive and declaratory relief to end the violations along with costs and fees.

Respectfully submitted,

Frederick H. Banks
#120759
950 Second Ave, Pittsburgh
PA 15219
Plaintiff

15

certificate of service

I hereby certify that a true and correct copy of the amended complaint was served vial mail delivery on this____day of_____, 2005, upon the following; this proof of service is made under the penalty for perjury 28 USC 1746;

_____

no freight elevators exist and heavy freight items such as food trays for thousands of inmates must be transported in the elevators several times daily.

62. Each pod has a prep kitchen but the prep kitchens are not used as a result the food is often served cold and the germs from the rodents often make inmates sick. Since during meal times enough juice isn't sent, Defendant Oerlin instead of calling the kitchen for more juice regulates the juice by filling up the plaintiffs cup to just 1/8 of the way full. Since, meal trays are only halfway filled with food the arbitrary regulations of the juice causes inmates stomachs to growl from lack of substenance.

63. The tables are rotting out and many do not have covers.

64. The carpeting permeates with dry rotting filth and must be replaced as it is the primary source for killer diseases such as MRSA which frequently kills and permanently damages inmates and officials at the building.

65. Each cell has holes and cracks in the walls ceiling and floors. Tiny disease infected winged bugs, knats, mites and fleas routinely enter the cells through the holes and leave bug bites on inmates. The bugs have infested the jail because the sewer drains are never cleaned and remain clogged which doesnt allow bugs to escape. ie. one way in - no way out.

66. The toilets can only be flushed once or twice an hour and the recycled water therein permits life threatening germs to enter the cells. In Sum, the jail is an eyesore that needs shut down. The defendants obstructed the equal and important course of justice because of the plaintiffs class based status in Pennsylvania as an African American inmate.

Count XXV - Constitutional Violations

67. Paragraphs 1 through 66 are hereby incorporated by reference and are realleged as if fully set forth again.

68. By subjecting Banks to the life threatening hazardes conditions cited above which occur because of the defendants official and personal policies and procedures, the defendants acting under the color of law to deprive Banks of his constitutional rights infringed upon Banks to due process, to be free from cruel and unusual punishment, right to equal treatments and protections, and the rights of a pre-trial detainee. The defendants actions in this elaborate civil conspiracy were willful, malicious, knowing, and intentional.

69. Because Banks has been subjected to these constitutional violations for over 13 months and most likely will be for another 12 months the defendants policies damaged him and he is entitled to damages pursuant to the constitution and 42 USC 1983 in a forfeiture judgment to transfer ownership and the deed of 950 Second Avenue to Banks and damages pursuant to 42 USC 1985 in the amount of $500,000,000.00. Totaling

13

$704,200,000.00.

Part G - Liberty rogues

70. At all times material Thomas M. Hardeman as individual is sued for his role in this vast and elaborate civil conspiracy that he played in procedural, administrative and investigative matters behind the scenes when he was not sitting legally on the bench as a Judge. Defendant Hardeman continued to make rulings as to

71.

72. The plaintiffs after he recognized an appearance of bias on February 23, 2005 and eventually recused from the above captioned matter and 04-176.

73. As a result of the Defendants actions The plaintiff lost 60 months of liberty, his personal possessions and his stature in the community.

74. The Defendants went brazenly and boldly further to hold Banks on pain of contempt if he did not dismiss his lawful civil Bankruptcy suits which denied him and his creditors property rights and was a matter outside his subject matter jurisdiction since no order in the Bankruptcy Court had been returned to appeal to Hardeman from, and as such trumped the Bankruptcy Judge who did have jurisdiction to adjudicate the actions. Defendant Hardeman clearly knew the matters were outside his jurisdiction but continued to perform the illegal actions nontheless.

75. Defendant law clerk David Chebit wrote opinions and rubber stamped court orders effecting Banks livelyhood with Thomas Hardman's signiture. The Defendants went boldly further and simply ignored motions such as Banks motion to proceed pro se in 03-245 (doc. no. 170) and his motion to dismiss the sentencing allegations that the Supreme Court in Booker stated was improper and used an illegal sentencing verdict against Banks.

76. J. Snyder the bailiff in 03-245 as to Count 5 crossed out the misdemenor count that the jury had checked after the returned the verdict of guilty to that count. That is the jury simply checked straight down the verdict form without reading it. If the jury would've bothered to read the form they would have realized that there were two parts to Count 5, criminal and misdemenor which the the jury checked guilty on both. During the read through upon realizing the double Jeopardy violation J. Snyder paused then put a line through the misdemenor copyright infringement guilty verdict. So in essence Defendant Snyder chose what Banks was guilty of not the empaneled jury which violated Banks rights to be tried and convicted of a jury of his peers and put Banks on a literal easter egg hunt for Justice.

77. The illegal alteration of the verdict form damaged Banks in that he lost 60 months of liberty because of the calculated cowardly, malicious and wanton actions of the

14

Defendants. The defendants obstructed the equal and impartial course of justice because of the plaintiffs' class based status in Pennsylvania as an African Americans while acting under the color of law to deprive the plaintiffs of constitutional Rights utilizing their tazmanian trickery.

Count XXII - Constitutional Violations

78. Paragraphs 1 through 77 are hereby incorporated by reference and are realleged as if fully set forth again.

79. By subjecting the plaintiffs to the conditions cited above which occur because of the Defendants' official and personal policies and procedures, the defendants acting under the color of law to deprive Banks of his constitutional rights infringed upon Banks' rights to due process, to be free from cruel and unusual punishment, equal protection, and the rights of a pretrial detainee. The defendants actions in this elaborate civil conspiracy were willful, malicious, knowing and intentional.

80. Because Banks has been subjected to the conditions for over 13 months and will be for another 47 months, the defendants policies damaged him and he is entitled to damages pursuant to the constitution and 42 USC 1983 in the amount of $1,000,000,000.00 and damages pursuant to 42 USC 1985 in the amount of $7,000,000,000.00 totaling $8,000,000,000.00.

Injunctive relief

81. Paragraphs 1 through 80 are hereby incorporated by reference as if fully set forth again.

82. The plaintiffs seek injunctive relief against the defendants to end the violations because there is a real threat the actions will continue since the plaintiff is an incarcerated African American under the domination and control of, as shown reckless cheats of the fair and impartial administration of equal justice under the laws of the constitution of the United States of America and the violations continue again and again with no end in site.

WHEREFORE, the plaintiffs respectfully demand that Judgment be entered in the amount of $19,844,400,000.00, a forfeiture Judgment of the properties known as 3311 East Carson Street and 950 Second Avenue and injunctive and declaratory relief to end the violations along with costs and fees.

Respectfully submitted,

Frederick H. Banks
#12055+
950 Second Ave, Pittsburgh
PA 15219
Plaintiff

15

certificate of service

I hereby certify that a true and correct copy of the amended complaint and Summons was served vial mail delivery on this 27th day of July, 2005, upon the following; this proof of service is made under the penalty for perjury 28 USC 1746;

Paul Hull, Brendan T. Conway, Department of Justice, United States of America, Mary Beth Buchanan c/o Rebecca Ross Haywood, AUSA
400 US Courthouse
700 Grant Street
Pittsburgh, PA 15219

Timothy Pivnichny, John Doe
Eric Strom
Federal Bureau of Investigation
3311 East Carson Street
Pittsburgh, PA 15203

David Anderchak, John Wisniewski, US Post Office, USPIS
1001 California Avenue
Pittsburgh, PA 15290-9000

Cynthia Reed Eddy, Johnson & Eddy
1720 Gulf Tower
707 Grant Street
Pittsburgh, PA 15219

Torsten Ove, Pittsburgh Post Gazette,
34 Blvd of the Allies
Pittsburgh, PA 15222

Dan Onorato, 950 Second Avenue
County of Allegheny, Pennsylvania
Ramon Rustin, Calvin Lightfoot
Fred Rosmeyer, Mary C. Rubin
Rocky Fowler, Henne, Albert Devlin
c/o Allegheny County Law Dept.
300 Fort Pitt Boulevard
Pittsburgh, PA 15219

Thomas M. Hardiman, J. Snyder
David Chobit
PO Box 1805
Pittsburgh, PA 15230

*James A. Thomas* (signature)
James A. Thomas
4632
950 Second Ave
Pitts. PA
15219