IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

FREDERICK H. BANKS; VAMPIRE　　)
NATION; HEXAGON LLC.; HEXAGON　)
RECORDS,　　　　　　　　　　　　)
　　　　　　　Plaintiffs,　　　　　　)
　　　　　　　　　　　　　　　　　　)
　　　vs.　　　　　　　　　　　　　　)　　　Civil Action No. 04-1771
　　　　　　　　　　　　　　　　　　)
3311 EAST CARSON STREET; PAUL　)　　　Judge Gary L. Lancaster
HULL; BRENDAN T. CONWAY;　　　　)　　　Magistrate Judge Amy Reynolds Hay
MARY BETH BUCHANAN;　　　　　　)
TIMOTHY PIVNICHNY; JOHN DOE;　　)
ERIC STROM; DAVID ANDERCHAK;　　)
JOHN WISNIEWSKI; CYNTHIA　　　　)
REED EDDY; TORSTEN OVE;　　　　　)
JOHNSON & EDDY; PITTSBURGH　　　)
POST GAZETTE; U.S. POST OFFICE;　　)
DEPARTMENT OF JUSTICE;　　　　　　)
UNITED STATES OF AMERICA;　　　　)
THOMAS M. HARDIMAN; DAVID　　　)
CHOBIT; J. SNYDER; 950 SECOND　　　)
AVENUE; COUNTY OF ALLEGHENY,　)
PENNSYLVANIA; RAMON RUSTIN;　　)
CALVIN LIGHTFOOT; FRED　　　　　　)
ROSMEYER; ROCKY FOWLER;　　　　　)
MARY C. RUBIN; HENNE;　　　　　　　)
ALBERT DEVLIN; and DAN　　　　　　)
ONORATO,　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　)　　　Re: Dkt. Nos. [138], [151], [156] & [163]
　　　　　　　Defendants.　　　　　　　)

REPORT AND RECOMMENDATION

RECOMMENDATION

　　　　　It is recommended that the motion not to serve (Dkt. [138]) be granted.  It is

recommended that the motion to vacate IFP (Dkt. [151] ) be granted as against Hexagon LLC.  It

is further recommended that the motion to dismiss filed by Eddy (Dkt. [156]) be granted.  It is

further recommended that the County Defendants's motion to dismiss (Dkt. [163]) be granted.  It

is further recommended that all the claims against the Post Gazette Defendants be dismissed pursuant to the PLRA.

REPORT

Frederick Banks (Plaintiff), is currently incarcerated at the FCI-Yazoo City in Mississippi.  He was previously convicted in this court in two separate cases: United States v. Banks, No. 03-CR-245 (W.D. Pa.) and United States v. Banks, No. 04-CR-176 (W.D. Pa.).[1]  In the operative complaint (Dkt. [24]), Plaintiff alleges, inter alia, that the defendants have violated his constitutional rights.  This case has been the subject of prior proceedings, including a report that recommended the grant of summary judgment to all of the Federal Defendants, Dkt. [79], which was adopted as the opinion of the court, Dkt. [87], over Plaintiff's objections, Dkt. [80]. Familiarity with those proceedings is presumed.

**A.  Relevant Procedural History**

---

[1]  Plaintiff is currently serving a sentence of sixty months in No. 03-CR-245 for his convictions of seven counts of mail fraud, criminal copyright infringement, money laundering, uttering and possessing counterfeit or forged securities, and witness tampering.  Upon expiration of that sentence, he will commence serving a sentence of sixty-three (63) months on his conviction for eight counts of mail fraud.  Id. (Dkt. 391, judgment of sentence, indicating the sentence is to be served consecutive to the sentence imposed at No. 03-CR-245).

The operative complaint in this case is Dkt. [24].  The plaintiffs listed on the operative complaint are Frederick Banks, Vampire Nation,[2] Hexagon Records,[3] and Hexagon LLC.[4]  As noted, all of the Federal Defendants have been granted summary judgment.  Dkt. [87].[5]

The operative complaint named as defendants the Post Gazette and one of its reporters, Tortsen Ove (collectively, the "PG Defendants").  The complaint alleges that the PG Defendants printed press releases given by the some of the Federal Defendants, detailing allegations made against Plaintiff in the criminal proceedings.  He claims that the PG defendants libeled and defamed  him as well as violated his constitutional rights to liberty, property, due process and equal protection.  In a conclusory allegation, he also alleges the defendants acted individually and in a conspiracy together to inflict purposeful injury on the plaintiffs.

The complaint also named as defendants Cynthia Reed Eddy, Esq. and Johnson & Eddy, LLC (collectively, "Eddy").  Attorney Eddy was a private attorney who represented Ms. Meredith Bondi in connection with her testimony as a witness for the prosecution in Banks' criminal trial, United States v. Banks,  No. 03-CR-245.  Plaintiff alleges that Ms. Bondi and he were engaged to

---

[2] Vampire Nation is merely a fictitious name by which Frederick Banks did business; it is a sole proprietorship, as Banks himself admits. Dkt. [144] at 1.

[3] As noted in the public record, Hexagon Records is simply a fictitious name owned by Hexagon LLC.  The information for Hexagon Records may be found at

http://www.corporations.state.pa.us/corp/soskb/Corp.asp?1981739

[4] Hexagon LLC is in fact a limited liability company.  Its sole officer is Frederick Banks.  The information for Hexagon LLC  may be found at

http://www.corporations.state.pa.us/corp/soskb/Corp.asp?1977786

[5] One of the Defendants who was identified as John Doe, "an individual and FBI special agent[,]" Dkt. [24] at 1, ¶2, has been retained improperly on the docket.  The grant of summary judgment to all of the Federal Defendants included or should have included this John Doe defendant.  Accordingly, the John Doe defendant should be terminated as a party defendant from this action based upon the prior grant of summary judgement.

be married.  He alleges that Attorney Eddy along with some of the Federal Defendants tortiously interfered with that romantic relationship when Eddy and others persuaded Ms. Bondi to not associate with Banks and to move out of the Banks home.  Plaintiff alleges that Defendant Eddy engaged in a civil conspiracy to, and did herself tortiously interfere with his relationship and that this violated his rights under the constitution and constituted certain common law torts.  The operative complaint makes no specific allegations against Johnson and Eddy, LLC.

The operative complaint also named the following Defendants: 950 Second Avenue, County of Allegheny, Ramon Rustin, Calvin Lightfoot, Fred Rosemeyer, Rocky Fowler, Mary C. Rubin, "Henne," Albert Devlin, and Dan Onorato (collectively, "County Defendants").  Plaintiff alleges that while held at the Allegheny County Jail, he was exposed to staph infection  and MRSA.[6]  In addition, the complaint alleges that the jail policies and procedures, as well as actions of individual County Defendants, interfered with Banks' mail, including his legal mail, and that this denied him his right of access to the court.  In addition, he complains that the County Jail, located at 950 Second Avenue, is not structurally sound, the ventilation and heating/cooling system is broken, and the electrical system is faulty, the jail is dirty, showers are broken, the roof leaks, there are problems with elevators, food is served cold, and the jail has an infestation of rodents.  He alleges that this violated his constitutional rights.

The PG Defendants filed a motion for permission not to serve pleadings on the following plaintiff-parties: Vampire Nation, Hexagon LLC and Hexagon Records.  Dkt. [138].  Plaintiff Banks filed a response in opposition.  Dkt. [144].  Eddy also filed a motion to join in the PG Defendants' motion not to serve, Dkt. [141], which was granted.  Dkt. [170].   The PG Defendants also filed a motion to vacate the order granting IFP status as to all of the party

---

[6]  MRSA is "Methicillin-resistant Staphylococcus aureus."

Plaintiffs other than Banks, but, as to Banks, the motion sought a dismissal pursuant to the Prison Litigation Reform Act, 28 U.S.C. 1915(e)(2).  Dkt. [151].  Eddy also filed a motion to join in the PG Defendants' motion to vacate, Dkt. [157], which was granted, Dkt. [170].  Plaintiff filed a response in opposition to the motion to vacate order granting IFP.  Dkt. [166].

Eddy also filed a motion to dismiss or in the alternative a motion for summary judgment, Dkt. [156] , with a brief in support. Dkt. [161].   Plaintiff filed a response in opposition to Eddy's motion.  Dkt. [165].

The County Defendants filed a motion to dismiss, Dkt. [163], and a brief in support. Dkt. [164].  Plaintiff filed a response in opposition.  Dkt. [167].

## B.  Applicable Legal Principles

### 1.  Motion to Dismiss

In considering a motion to dismiss under 12(b)(6), the complaint must be read in the light most favorable to the plaintiff and all well-pleaded, material allegations of fact in the complaint must be taken as true.  See  Estelle v. Gamble, 429 U.S. 97 (1976).  In addition to the complaint, courts may consider matters of public record and other matters of which a court may take judicial notice, court orders, and exhibits attached to the complaint in considering a motion to dismiss under Rule 12(b)(6).  Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1385 n.2 (3d Cir. 1994); Barber v. Grow, 929 F.Supp. 820, 822 (E.D. Pa. 1996).   The Court need not accept as true any factual averments in the complaint which contradict facts of which the court may take judicial notice.  See, e.g., Sprewell v. Golden State Warriors, 266 F.3d 979, 988(9th Cir. 2001)(In ruling on a motion to dismiss, "[t]he court need not, however, accept as true allegations that contradict matters properly subject to judicial notice. . . ."); Commonwealth Edison Co. v. United States, 46 Fed. Cl. 158, 160 n.3 (Fed. Cl. 2000), aff'd., 271 F.3d 1327 (Fed.Cir. 2001); 5A

5

Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1363, at 464-65 (2d ed.1990).

Dismissal is proper under Rule 12(b)(6) where the court determines that the facts as alleged by the plaintiff taken as true and viewed in a light most favorable to the plaintiff, fail to state a claim as a matter of law. See, e.g., Gould Electronics, Inc. v. U.S., 220 F.3d 169, 178 (3d Cir. 2000).

## 2. Prison Litigation Reform Act

In the Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104-134, 110 Stat. 1321 (1996), Congress adopted major changes affecting civil rights actions brought by prisoners in an effort to curb the increasing number of oftentimes frivolous and harassing law suits brought by persons in custody. See Santana v. United States, 98 F.3d 752, 755 (3d Cir. 1996). The PLRA significantly amended the statutory provisions with respect to actions brought by prisoners who are proceeding in forma pauperis. The amended version of the statute now reads that "[n]otwithstanding any filing fee, or any portion thereof, that may have been paid [by a prisoner granted IFP status], the court shall dismiss the case at any time if the court determines that– (A) the allegation of poverty is untrue; or (B) the action or appeal– (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(emphasis added). Here, Plaintiff has been granted IFP status, and was a prisoner at the time of initiating this suit and continues to be a prisoner within the meaning of 28 U.S.C. § 1915.[7] Thus, Section 1915(e)(2) is

---

[7] The term "prisoner" as used in Section 1915 means "any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 28 U.S.C. § 1915(h).

applicable herein.  Moreover, not only is a court permitted to sua sponte dismiss a complaint

which fails to state a claim, but it is required to do so by the mandatory language of "the court

shall dismiss" utilized by Section 1915(e).  See, e.g., Keener v. Pennsylvania Board of Probation

and Parole, 128 F.3d 143, 145 n.2 (3d Cir. 1997) (describing 28 U.S.C. § 1915(e)(2)(B) as "the

PLRA provision mandating sua sponte dismissal of in forma pauperis actions that are frivolous

or fail to state a claim."); Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000)("It is also clear

that section 1915(e) not only permits but requires a district court to dismiss an in forma pauperis

complaint that fails to state a claim.").  The court's obligation to dismiss a complaint under the

PLRA is not excused even after the defendants have filed a motion to dismiss if it appears to the

court that the complaint fails to state a claim based upon grounds which were not raised by the

defendants in their motion to dismiss.  See, e.g., Lopez v. Smith, 203 F.3d 1122, 1126 n.6 (9th

Cir. 2000).   Hence, if there is a ground for dismissal which was not relied upon by the

Defendants in their motions, the court may nonetheless sua sponte rest its dismissal upon such

ground pursuant to the screening provisions of the PLRA.  See id.

      In performing a court's mandated function of sua sponte reviewing complaints under

28 U.S.C. § 1915(e) to determine if they fail to state a claim upon which relief can be granted, a

federal district court applies the same standard applied to motions to dismiss under Federal Rule

of Civil Procedure 12(b)(6).  See, e.g., Powell v. Hoover, 956 F. Supp. 564, 568 (M.D. Pa.

1997)(applying Rule 12(b)(6) standard to claim dismissed under 28 U.S.C. § 1915(e)(2)(B)(ii));

Tucker v. Angelone, 954 F. Supp. 134, 135 (E.D. Va.) ("Under  28 U.S.C. §§ 1915A, 1915(e)

and 42 U.S.C. § 1997e(c) the courts are directed to dismiss any claims made by inmates that 'fail

to state a claim upon which relief could be granted'. This is the familiar standard for a motion to

dismiss under Fed.R.Civ.P. 12(b)(6)."), aff'd, 116 F.3d 473 (Table) (4th Cir. 1997).

Because under Rule 12(b)(6), courts may consider, in addition to the complaint, matters of public record and other matters of which a court may take judicial notice,  Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d at 1385 n.2, and because the standards for dismissal for failing to state a claim under 28 U.S.C. § 1915(e) are the same as under a 12(b)(6) motion, the court may consider matters of which it may take judicial notice under 28 U.S.C. § 1915(e).  See, e.g., Lloyd v. U.S., No. 99 C 3347, 1999 WL 759375, at *1 (N.D. Ill. Sept. 3, 1999) ("As the court may take judicial notice of public records without converting a motion to dismiss to a motion for summary judgment, *Henson v. CSC Credit Services*, 29 F.3d 280, 284 (7th Cir. 1994), the court will take judicial notice of court records in conducting its initial review under § 1915A.").

 To the extent that any of the grounds relied upon in the report were not relied upon by the various motions filed by the defendants, the court raises those grounds sua sponte pursuant to the PLRA.

### C.  Discussion

#### 1.  Seeking not to Serve some Plaintiffs

The PG Defendants and Eddy seek permission not to serve certain Plaintiffs, namely all those other than Banks.  Because Banks admits that Vampire Nation and Hexagon Records are sole proprietorships that he wholly owns, Dkt. [144], the Defendants' motion should be granted because, accepting Banks' representations as true, Vampire Nation and Hexagon Records are, according to Banks, sole proprietorships and as such, are simply alter egos of Frederick Banks and as such, service on Frederick Banks is service on those sole proprietorships.  Standard Fire Ins. Co. v. Arnold,  27 Fed.Appx. 125, 126 (3d Cir. 2002)("a sole proprietorship has no existence separate and apart from its individual owner").   Hence, Vampire Nation and Hexagon Records,

as sole proprietorships,  have no capacity to sue in their own names and must be dismissed from

this suit.  See, e.g., Borah v. Monumental Life Ins. Co., NO. CIV.A. 04-3617, 2005 WL 351040,

*2 (E.D.Pa.  Feb. 14, 2005)  wherein the court held that

> Under Pennsylvania law, a sole proprietorship is not legally separate from its
> owner. *The Glidden Co., Inc. v. Dept. of Labor & Indus*., 700 A.2d 555, 558
> (Pa.Commw.Ct.1997) ("A sole proprietorship has no existence separate and apart
> from its owner.") As Sea Nine has no legal existence apart from its owner, Steven
> Ross, it cannot be sued separately and must be dismissed from this action. *See
> Cashco Oil Co. v. Moses*, 605 F.Supp. 70, 71 (N.D.Ill.1985) (dismissing sole
> proprietorship from action because it had no separate legal existence apart from
> owner and could not be sued along with owner under the relevant applicable law).
> The individual owner remains personally liable for all of the business' obligations.
> "Doing business under another name does not create an entity distinct from the
> person operating the business; the firm name and the sole proprietor's name are
> but two names for one person." 65 C.J.S. Names § 14 (2004).

Hence, none of the Defendants[8] needs to serve Vampire Nation or Hexagon Records.  However,

because Hexagon LLC does have a separate legal existence, the foregoing rationale does not

apply.  Nevertheless, because immediately below the court recommends dismissal of Hexagon

LLC due to it not being able to proceed IFP, the Defendants will not need to serve the LLC

either.[9]

### 2.  Vacating IFP status

The Defendants point out that the statute permitting the grant of *in forma pauperis*

("IFP") status is limited to granting IFP status to natural persons.  The Defendants are correct.

See, e.g., Rowland v. California Men's Colony, 506 U.S. 194, 196 (1993)("Title 28 U.S.C. §

---

[8]  While the County Defendants may not have moved to not serve some Plaintiffs, the rationale
above applies equally to them and they are not required to serve Vampire Nation or Hexagon Records.

[9]  While this report recommends dismissal of the complaint in toto, the question of whom to
serve is not moot as the Defendants would be required to serve the Plaintiffs other than Banks in any post
Report proceedings and/or any appeal to the Circuit but for the granting of the Defendants' motion to not
serve.

1915, providing for appearances in forma pauperis, authorizes federal courts to favor any 'person' meeting its criteria with a series of benefits including dispensation from the obligation to prepay fees, costs, or security for bringing, defending, or appealing a lawsuit. Here, we are asked to decide whether the term 'person' as so used applies to the artificial entities . . . . We hold that it does not, so that only a natural person may qualify for treatment in forma pauperis under § 1915.").

Plaintiff's only response is to misunderstand the import of the legal argument by the Defendants.  Their argument is that no one other than a natural person may be granted IFP status. Instead of addressing this argument, Plaintiff argues that even though he is a non-lawyer, he may act on behalf of the LLC and the sole proprietorships.  See, e.g., Dkt. [145] at 1, wherein Plaintiff argues that

> *Rowland v. California Men's Colony,* 596 U.S. 194, 666 [sic] 113 S. Ct. 716, 121 L. Ed. 2d 656 (1993) [states that] "for the better part of two centuries, for example, [the rule was] that a corporation may appear in the federal courts only through licensed counsel."  . . . .  However, In [sic] this case Bank's [sic] companies are a Limited Liability Company (Hexagon), a sole proprietorship (Hexagon Records) and a sole proprietorship (Vampire Nation) and Bank's [sic] owns 100% of the stock in Hexagon LLC and files his taxes as a sole proprietorship for these companies.  Thus, Banks my represent the companies that he owns Pro se.

Plaintiff's argument is non-responsive to the Defendants' point.  Regardless of who may represent a limited liability company in federal litigation, Hexagon LLC as a corporate type entity, i.e., a non-natural person,  may not proceed IFP.  Hence, any grant of IFP status to Hexagon LLC was improper *ab initio* and Hexagon LLC should never have been permitted to proceed as a party-plaintiff to this suit.  Hence, the order granting IFP status to Hexagon LLC should be vacated and it is recommended that Hexagon LLC be dismissed as a party-plaintiff from this suit.

In addition, Plaintiff brings up another ground on which to dismiss Hexagon LLC.  As noted in his non-responsive argument, the general rule is that a corporation or limited liability company may not proceed in a federal lawsuit without an attorney entering an appearance on behalf of the entity.  Rowland v. California Men's Colony.  Plaintiff attempts to distinguish the general rule from applying to his case when he points out that he is the sole owner of Hexagon LLC.  However, this is a distinction without a difference.  The rule applies nonetheless.  See e.g., S. W. Express, Co. v. ICC, 670 F.2d 53, 56 (5th Cir. 1982) (wherein "Mr. Timothy C. Hope . . . sole owner of Southwest Express Co., Inc." who was a non-lawyer, was prohibited by the court from prosecuting the case in the name of the corporation).

Hence, in the alternative, the case should be dismissed as to Hexagon LLC because Banks, as a non-lawyer, cannot represent it and hence, it was never properly a party-plaintiff to this suit because it was never represented by an attorney and could not act but through an attorney to even initiate this suit.

### 3.  PG Defendants should be dismissed.

As against the PG Defendants, the operative complaint asserts that from mid-2003 to October 16, 2004, some of the Federal Defendants provided press releases concerning the prosecution of Banks and that the PG Defendants published those.  Banks contends that those releases improperly described Banks as a fraudulent character, and that a victim of Banks had given Banks a business check, however, the various Defendants are alleged to have known at the time of the press releases that the "business check" was fraudulent.  Plaintiff complains that the PG Defendants printed these press releases and published other stories about him and that such libeled him and defamed him.  In addition, he complains that these publications deprived him of his constitutional rights, including, inter alia, the deprivation of liberty.

Because Plaintiff seeks to bring this action against the PG Defendants pursuant to 42 U.S.C. § 1983, he argues that the PG Defendants acted under color of state law.  He argues so because in order to state a claim under Section 1983,  the complaint must reveal that (1) the challenged conduct was committed by a person acting under color of state law and (2) that the conduct infringed on Plaintiff's federal rights.  See Piecknick v. Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir. 1994).  The private newspaper, the Post Gazette, and its journalist, Tortsen Ove, do not, as a matter of law, act under color of law so as to be liable under Section 1983.  This is so notwithstanding Plaintiff's argument that because the PG is incorporated under the laws of Pennsylvania, it was acting under the color of state law.  See, e.g., Blouin v. Loyola University, 506 F.2d 20, 21-22 (5th Cir.  1975) ("appellant suggests that a finding of state action would be justified by the fact that Loyola is a corporation organized and incorporated under the laws of the State of Louisiana.  Loyola maintains that none of these factors, either individually or collectively, are of the nature, kind, or degree to support a finding of state action.  We agree.  The licensing of an otherwise private entity by the government does not, of itself, require a finding of state action.").  See also Vander Linden v. Wilbanks, 128 F.Supp.2d 900 (D.S.C. 2000)(granting motion to dismiss and finding that newspaper was not state actor, notwithstanding allegation that newspaper and its incorporated publisher worked in "joint cooperation" with a state actor); Mimms v. Philadelphia Newspapers, Inc., 352 F.Supp. 862, 865 (E.D. Pa. 1972)("First, the complaint does not-and could not-allege that defendants other than the warden acted under color of law. They are newspaper people whose orbit is far from the governmental sphere and, by virtue of the first amendment, essentially insulated from it.").[10]  The Wilbanks case presented an

---

[10]  Nor is Plaintiff's citation to Martin-Marietta Corp. v. Bendix Corp., 690 F.2d 558 (6th Cir. 1982) persuasive for the proposition that private corporations constitute state actors merely because they are incorporated under the laws of a state.  See, e.g., Banks v. Haywood, No. 06-CV-1572 (W.D. Pa. Dkt.

even stronger case than Plaintiff's case for the finding of state action and still the complaint was dismissed.  A fortiori, Plaintiff's complaint should likewise be dismissed to the extent that it seeks to proceed under Section 1983.

However, Plaintiff's invocation of Section 1983 as the jurisdictional basis of this action is wrong as a matter of law. This is because what Plaintiff is really alleging is that the PG Defendants conspired with the Federal Defendants to violate his rights.  Hence, Section 1983 is not the applicable statute.  Rather, the applicable jurisdictional basis for attempting to find the PG Defendants liable would be  Bivens v. Six Unknown Named Agents, 403 U.S. 388 (1971) and not 42 U.S.C. § 1983.  Curtis v. Barber, 833 F.2d 1011 (Table), 1987 WL 38884, *1 (6th Cir. 1987)(in a federal prisoner's civil rights suit against his privately retained attorney who represented him in a federal criminal trial, the court held that "[b]oth §§ 1983 and 1985 are inappropriate because of the absence of state action. Under a liberal construction, the facially correct cause of action is a *Bivens* suit. However, a *Bivens* action must fail because there is no federal action: privately retained counsel do not act under color of law.")  Nevertheless, the reasoning above as to why the PG Defendants do no act under color of state law, applies equally as to why they do not act under color of federal law.  This makes Plaintiff's argument with respect to the fact that the PG is a corporation created under Pennsylvania law and therefore

---

5-1).  It is true that the Bendix court stated in broad terms that "Private individual conduct may constitute action under color of state statute where the power possessed by an individual or entity is possessed only because the individual or entity is clothed with the authority of state law."  Bendix. 690 F.2d at 562. However, to read this statement to mean that because the newspaper is a corporation and hence, its power to act as a corporation is possessed only because the newspaper is clothed with the authority of state law is to read the statement too broadly and to render every action of every corporation "action under color of state law," a proposition that is self-evidently incorrect.  To the extent that the Bendix case may be read to hold such a proposition, it is the decision of the Sixth Circuit and not binding authority for this court.  Hence, it is only persuasive authority and as such, authority only to the extent it is persuasive.  This court finds it is not persuasive and finds instead, the decision in Vander Linden v. Wilbanks persuasive.

satisfies the state action element irrelevant.  The analysis and conclusion under either <u>Bivens</u> or

Section 1983 is the same, i.e., newspapers do not act under color of federal or state law as is

required to state a claim under <u>Bivens</u> (federal law) or Section 1983 (state law).  This is true

notwithstanding Plaintiff's conclusory allegation that the PG Defendants and the Federal

Defendants conspired together as is made clear later in the report where the court addresses the

conspiracy claim.

### 4.   **Eddy Defendants**

Eddy filed a motion to dismiss in which they argue that they are not state actors for

purposes of Section 1983.  That is correct.  <u>Cf</u>. <u>Polk County v. Dodson</u>, 454 U.S. 312 (1981)(not

even public defenders who are employed by the state, constitute state actors).  However, in fact,

because Attorney Eddy was representing Plaintiff's ex fiancee in federal court, the correct

jurisdictional basis would be <u>Bivens v. Six Unknown Named Agents</u>, 403 U.S. 388 (1971), and

not 42 U.S.C. § 1983.  <u>Cf</u>.  <u>Curtis v. Barber</u>, 833 F.2d 1011 (Table), 1987 WL 38884, *1 (6th Cir.

1987).  The analysis and conclusion under either <u>Bivens</u> or Section 1983 is the same:  attorneys

representing or failing to adequately represent criminal defendants, yet alone attorneys who

merely represent witnesses in the course of a trial during federal criminal proceedings, as did

Eddy herein, do not act under color of federal or state law as is required to state a claim under

<u>Bivens</u> (federal law) or Section 1983 (state law).  <u>See</u>, <u>e.g.</u>, <u>id.</u>; <u>Christian v. Crawford</u>, 907 F.2d

808, 809 (8th Cir. 1990)("attorneys do not act under color of state or federal law when

representing clients, and therefore relief cannot be obtained under either section 1983 or

<u>Bivens</u>");  <u>Simmons v. Ayers</u>, 878 F.2d 386 (Table), 1989 WL 71449, *1 (9th Cir. 1989)

("attorneys do not act under color of state or federal law when representing clients").  Hence,

Eddy is entitled to dismissal of the complaint against them.  Again, Plaintiff's arguments that

Eddy is a corporation created under state law is of no assistance.  Merely being a corporation

does not mean that the corporation acts under color of state law, notwithstanding Plaintiff Banks'

citation to <u>Martin-Marietta</u>.   <u>See</u>, <u>e.g.</u>, <u>Blouin v. Loyola University</u>, 506 F.2d at 21-22.

### 5.  County Defendants

The operative complaint makes essentially three distinct claims against the County

Defendants.  One claim is that the County Defendants denied Plaintiff access to courts.  The

second claim is really a whole host of claims concerning the conditions of the Allegheny County

jail, including its alleged lack of sanitary conditions, its alleged service of cold food, its allegedly

deteriorating infrastructure, and its medical treatment or lack thereof which allegedly posed a

threat of exposing Plaintiff to MSRA.  The third claim is that they all engaged in a conspiracy

against Plaintiff.

### (a)  Denial of Access Claim

As to his denial of access to the courts claim, the court finds it fails to state a claim as a

matter of law because Plaintiff does not sufficiently describe any cases which were lost due to the

alleged interference with his legal mail.  Plaintiff has failed to state a denial of access to courts

because he has not identified any "actual injury."   The court finds the case of <u>Christopher v.</u>

<u>Harbury</u>, 536 U.S. 403 (2002), to require dismissal of this claim.

In <u>Christopher</u>, a non-citizen husband of an American wife was detained in a foreign

country by CIA-employed foreign army officers who eventually killed him.  Prior to his death,

the wife had tried to obtain information about her husband, however, the State Department and

other governmental officials stated to her that they would investigate.  Nevertheless, these

governmental officials kept information from her and made misrepresentations that she alleged

prevented her from obtaining information that would have enabled her to file a suit to prevent her

husband's death. She alleged that the officials' conduct interfered with her right of access to the courts. The District Court dismissed the claim. The Court of Appeals reversed and the Supreme Court, in turn, reversed the Appeals Court and emphasized that in order to plead an adequate denial of access to courts claim the plaintiff must plead the existence of an injury, i.e., the loss of a non-frivolous lawsuit. Accordingly, the high Court reversed the Appeals Court and in effect, affirmed the District Court's order of dismissal for failure to state a claim.

The Supreme Court declared that the "very point of recognizing any access claim is to provide some effective vindication for a separate and distinct right to seek judicial relief for some wrong  . . . .  the right [of access claim] is ancillary to the underlying claim, without which the plaintiff cannot have suffered injury by being shut out of court." Christopher, 536 U.S. at 414-15. Therefore, "[i]t follows that the underlying cause of action . . . is an element that must be described in the complaint, just as much as the allegations must describe the official acts frustrating the claim." Id. at 415. In addition, the court explained that as part of the pleading requirement to demonstrate actual injury caused by the official actions, the plaintiff must plead that she has actually lost the opportunity to litigate that which she desired to litigate in the suit which was blocked by the official action. The Court explained that "the complaint must identify a remedy that may be awarded as recompense [for the blocked suit] but not otherwise available in some suit that may yet be brought." Id. In other words, if the claims in the blocked suit may yet be brought, there is no sense in litigating an access to courts claim because no actual injury was suffered if the claims in the blocked suit could still be brought. As the Supreme Court put it so succinctly, "[t]here is, after all, no point in spending time and money to establish the facts constituting denial of access when a plaintiff would end up just as well off after litigating a

16

simpler case without the denial of access element." <u>Id</u>.  With this understanding the Court then went on to hold that

> Like any other element of an access claim, the underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant. Although we have no reason here to try to describe pleading standards for the entire spectrum of access claims, this is the place to address a particular risk inherent in backward-looking claims [i.e., claims, such as the one Banks brings herein, i.e., that past behavior of officials have caused a party to lose access to courts in the past]. Characteristically, the action underlying this sort of access claim will not be tried independently, a fact that enhances the natural temptation on the part of plaintiffs to claim too much, by alleging more than might be shown in a full trial focused solely on the details of the predicate action.

> Hence the need for care in requiring that the predicate claim be described well enough to apply the "nonfrivolous" test and to show that the "arguable" nature of the underlying claim is more than hope.  And because these backward-looking cases are brought to get relief unobtainable in other suits, the remedy sought must itself be identified to hedge against the risk that an access claim be tried all the way through, only to find that the court can award no remedy that the plaintiff could not have been awarded on a presently existing claim.

<u>Id</u>., at 416 (footnotes and citations omitted).

Plaintiff's complaint suffers two flaws under <u>Christopher</u>.  First, Plaintiff has failed to sufficiently allege what cases he sought to bring and which were interfered with and his complaint fails to allege sufficient facts about those cases to demonstrate that they were non-frivolous.  Second, the only case Plaintiff does mention in passing is a case involving American Express.  However, it is clear that this did not involve a violation of his right of access to the court because <u>Lewis v. Casey</u>, 518 U.S. 343 (1996) expressly limits inmates' right of access to the courts to suits which challenge their sentences either directly or collaterally and to suits which challenge their conditions of confinement. The Court declared:

> <u>Bounds</u> does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims.  The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in

17

order to challenge the conditions of their confinement.  Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

Lewis, 518 U.S. at 355.  Thus, claims that are impaired, which are unrelated to an inmate's sentence or to the conditions of his incarceration, which is the case with the suit involving American Express,[11] are simply not cognizable under the rubric of a denial of his right of access to court.

The operative complaint also mentions negligence on the part of some County Defendants in relation to Plaintiff's mail.  To the extent that Plaintiff is attempting to say that the County Defendants' negligence in the handling of the mail deprives Plaintiff of a constitutional right, Plaintiff's claim fails as a matter of law because negligence is not a sufficient to raise a constitutional claim.  Daniels v. Williams, 474 U.S. 327, 333 (1986)("injuries inflicted by governmental negligence are not addressed by the United States Constitution");  Woodward v. City of Worland, 977 F.2d 1392, 1399 (10th Cir. 1992), cert. denied, 509 U.S. 923 (1993) ("[L]iability under § 1983 must be predicated upon a 'deliberate' deprivation of constitutional rights by the defendant," and not on negligence.");  Finch v. San Francisco Sheriff's Dept., 2002 WL 851073, *1 (N.D. Cal. May 2, 2002)("[t]he Constitution does not guarantee due care on the part of state officials; liability for negligently inflicted harm is categorically beneath the threshold

---

[11]  Plaintiff Banks referenced the American Express suit in Dkt. [31] at 2, noting that the law firm of Gaertner and Birsic representing American Express had sent a brief to Banks on June 7, 2005 and that Banks never received it but he had only until June 21, 20005 in which to file a brief in opposition. The court takes judicial notice of the fact that the lawsuit referenced was an appeal from the Bankruptcy Court, filed at Banks v. American Express, No. 05-cv-604 (W.D. Pa.), which was an adversary proceeding which the Bankruptcy court dismissed sua sponte for lack of subject matter jurisdiction and which the District Court affirmed and which the Court of Appeals affirmed on April 23, 2007.  Hence, it is clear that this bankruptcy appeal does not qualify as being within the ambit of the right of access to courts as explained in Lewis, as it neither challenges the fact of his confinement nor the conditions of his confinement.

of constitutional due process. *See County of Sacramento v. Lewis*, 523 U.S. 833, 849 (1998); *Davidson v. Cannon*, 474 U.S. 344, 348 (1986); *Daniels v. Williams*, 474 U.S. 327, 328 (1986).").[12]

### (b) Conditions of Confinement claims

The next set of claims against the County Defendants are claims concerning the conditions of his confinement while housed at the Allegheny County Jail.  There were ten named County Defendants.  The County Defendants have raised several defenses in their motion to dismiss.  Dkt. [163-1].  Among the defenses raised is that the County Defendants have not been served with process.  Id., at 2, ¶2.[13]  As noted in the footnote, five of the County Defendants have been served.  Five have not, including 950 Second Avenue, which was essentially dismissed as a party defendant being that it has no capacity to be sued.  Dkt. [146].[14]  The remaining four who were unserved are Allegheny County, Mary C. Rubin, "Henne," and Albert Devlin.  However, their lack of being served is not the basis upon which the court recommends their dismissal as party defendants.

---

[12]  To the extent that he seeks to bring a state law negligence claim, the Report addresses state law claims in the last section, recommending that the District Court decline to exercise supplemental jurisdiction over any state law claims.

[13]  County Defendants inexplicably claim that "Plaintiffs have failed to effectuate service on any of the said Defendants." Dkt. 2.  However, the docket shows returns of  service executed as to the following five (5) County Defendants: Dan Onorato, Dkt. [120]; Rocky Fowler, Dkt. [121] ; Ramon Rustin, Dkt. [122]; Calvin Lightfoot, Dkt. [123]; and Fred Rosemeyer, Dkt. 124.  Hence, without more from these Defendants, in the face of these executed returns of service, it cannot be said that they have not been properly served.  Homer v. Jones-Bey, 415 F.3d 748, 752 (7th Cir. 2005) ("under Federal Rule of Civil Procedure 4, '[a] signed return of service constitutes prima facie evidence of valid service 'which can be overcome only by strong and convincing evidence.'  Once such a prima facie showing is made, the burden shifts to the defendant to demonstrate that service was not received.")(citations and some internal quotations omitted).

[14]  The same order, Dkt. 146, that dismissed 950 Second Avenue also dismissed 3311 East Carson Street.  Inexplicably, the Clerk's Office retained these defendants on the docket.

Plaintiff's claims against County Defendants Rubin, Henne and Fowler appear to be related solely to Banks not obtaining his mail in a timely fashion, or having his mail opened outside of his presence, or having his mail copied. Plaintiff also makes these same claims against Defendant Devlin, however, he also makes one additional claim against Devlin that is addressed below. To the extent that Plaintiff claims the alleged interference with his mail deprives him of his right of access to the courts, this claim has been disposed of above and fails to state a claim. To the extent that he seeks to make a claim that Rubin and/or Henne and/or Fowler and/or Devlin are engaged in the obstruction of mails,[15] Obstruction of Mails is a criminal violation with no private cause of action. See, e.g., Pennhurst State School and Hospital v. Halderman, 451 U.S. 1, 27-28 (1981) (while section 1983 encompasses violations of rights secured by the 'laws' of the United States, it is available only to remedy violations of those federal statutes which create rights within the meaning of section 1983); Frison v. Zebro, 339 F.3d 994, 998 (8th Cir. 2003) ("Violation of a federal statute does not automatically give rise to a civil rights claim under § 1983. This is because '[i]n order to seek redress through § 1983, ... a plaintiff must assert the violation of a federal **right**, not merely a violation of federal **law**.' *Blessing v. Freestone*, 520 U.S. 329, 340 (1997) (emphasis in original)"). It is clear that the statutes referenced by Plaintiff, i.e., 18 U.S.C. §§ 1702 and 1703 et seq., do not provide for a private cause of action. In other words, the Obstruction of Mails statute does not confer a right to a person. Hence, violating the statute does not violate a federal civil right of the Plaintiff within the contemplation of Section 1983. Contemporary Mission, Inc. v. U.S. Postal Service, 648 F.2d 97 (2d Cir. 1981); Figueroa v. West Allis Medical Group, No. 97 C 276, 1997 WL 49293 (N.D. Ill. 1997); Bagguley v. Barr, 893 F.Supp. 967, 971 (D. Kan. 1995)(no private right of action under 18 U.S.C. § 1702); Buttar

---

[15]  See Dkt. [31] at 7.

v. Buttar, No. 85 C 1436, 1985 WL 1043 (N.D. Ill. April 30, 1985) (dismissing as frivolous, a civil complaint that alleged a violation of 18 U.S.C. § 1702); France v. Coughlin, No. 85 Civ. 6347, 1987 WL 10724 (S.D.N.Y. 1987).  The court finds that Plaintiff Banks' mail claims fail to state a claim against any of the County Defendants and because this is the only claim against Defendants Rubin, Henne and Fowler, they should be dismissed as party defendants.

The only other mention of Defendant Devlin occurs in connection with Plaintiff's complaint that Defendant Devlin filled Plaintiff's cup only 1/8 full of juice rather than calling down to the kitchen for more juice apparently so that Plaintiff's cup could be filled all the way. We find this claim to be frivolous, in the nature of the chunky peanut butter case of lore[16] and de minimis, in the absence of an allegation that Plaintiff could not obtain water to drink, and should be dismissed for failure to state a claim because, as the ancient maxim provides, "*de minimis non curat lex.*"  Accordingly, because the only two claims in the operative complaint against Defendant Devlin should be dismissed, he should be dismissed as a party defendant from this case.

The County Defendants note that Allegheny County cannot be held liable unless the complaint alleges that the County has enacted a policy which is responsible for the deprivation of rights.  Dkt. [164] at 2.  Plaintiff's response is the "Plaintiffs clearly stated that 'Defendants are sued in their individual and official capacities,' because they acted in a 'personal and official policy' to violate Plaintiffs [sic] rights."  Dkt. [167-1] at 1 to 2, ¶11.  In this regard, the court

---

[16]  See, e.g., Porter v. Nussle. 534 U.S. 516, 522 (2002)("Floor statements 'overwhelmingly suggest[ed]' that Congress sought to curtail suits qualifying as 'frivolous' because of their 'subject matter,' e.g., suits over 'insufficient storage locker space,' 'a defective haircut,' or 'being served chunky peanut butter instead of the creamy variety.'")(referencing the PLRA legislative history which may be found in relevant part at 141 Cong. Rec. S14413 (daily ed. Sept. 27, 1995) (statement of Sen. Abraham)).

finds the complaint's allegations of policy to be merely conclusory and hence fail to state a claim. Durham v. City and County of Erie, 171 Fed.Appx. 412, 414 (3d Cir. 2006)("A municipality may be liable under § 1983 if the Plaintiff proves that a policy or custom employed by the city resulted in a constitutional violation. Durham's complaint includes nothing more than a conclusory allegation that Erie has established an official policy or custom to deprive defendants of their right to counsel. . . Moreover, the complaint fails to allege the existence of any actually enacted policy . . . . . Durham fails to assert any facts that place the Defendant on notice of the basic elements of his cause of action. The claim was properly dismissed.")(citations omitted). Hence, the County of Allegheny should be dismissed as a party defendant.

The allegations of the complaint never specifically mention actions taken on the part of Onorato, Rustin, Lightfoot or Rosemeyer. This alone is sufficient to dismiss the complaint against them. See Potter v. Clark, 497 F.2d 1206, 1207 (7th Cir. 1974)("Where a complaint alleges no specific act or conduct on the part of the defendant and the complaint is silent as to the defendant except for his name appearing in the caption, the complaint is properly dismissed, even under the liberal construction to be given pro se complaints."); Amaya v. Milwaukee County, NO. 04-C-1114, 2006 WL 335437, *3 (E.D.Wis. Feb. 13, 2006) ("I would dismiss defendants who are named in the caption, but are not specifically mentioned in the body of the complaint, because plaintiff has failed to give these defendants "fair notice" of her claims against them.") (citing, Mover v. Hultz, No. 05-3039, 2005 U.S. Dist. LEXIS 27440, at *6 (C.D. Ill. Nov. 8 2005) (which in turn cited Collins v. Kibort, 143 F.3d 331, 334 (7th Cir. 1998)); Hernandez v. County of DuPage, NO. 96 C 8030, 1997 WL 598132, *9-10 (N.D.Ill.) (dismissing claims where plaintiff named four of the defendants in the caption but failed to specifically mention them in the complaint, using only the word "defendants"). Moreover, further amendment of the

complaint would be futile because it is clear that Plaintiff's allegations reveal liability against Defendants Onorato, Rustin, Lightfoot and Rosemeyer based merely on *respondeat superior* and hence fail to state a claim against them.  See, e.g., Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988) ("A defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of respondeat superior.").

### (c)  Conspiracy

The third claim against all of the County Defendants is a conclusory allegation that they all engaged in a conspiracy against the Plaintiff.  However, such conclusory allegations of conspiracy are insufficient to state a claim upon which relief can be granted.  See e.g., Rose v. Bartle, 871 F.2d 331, 366 (3d Cir. 1989)("[t]he allegations [of conspiracy] must be sufficient to 'describe the general composition of the conspiracy, some or all of its broad objectives, and the defendant's general role in that conspiracy.'").  Nor does this requirement that allegations of conspiracy be more than conclusory run afoul of the generous pleading standard under Fed.R.Civ.P. 8(a) as construed in Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit, 507 U.S. 163 (1993). See, e.g., Loftus v. SEPTA, 843 F.Supp. 981, 988 (E.D. Pa. 1994) ("Requiring that a complaint alleging conspiracy flesh out in some detail the nature of the scheme does not run afoul of the admonition in *Leatherman* .... Rather, in the context of a conspiracy, the 'short and plain statement' provision of Rule 8 is satisfied only if the defendant is provided with the degree of particularity that animates the fair notice requirement of the rule.").  Hence, because the sole remaining claims against the County Defendants  is the conspiracy claim and that claim should be dismissed, the all of the County Defendants should be dismissed as party defendants.

### 6.  State Law Claims

Because the court recommends dismissal of all of Plaintiff Banks' (i.e., the only remaining Plaintiff, if the District Court adopts the Report) federal law claims against all defendants, the Court should decline to exercise supplemental jurisdiction over any state law claims Plaintiff is attempting to bring.  See, e.g., Boneburger v. Plymouth Township, 132 F.3d 20, 23 n.1 (3d Cir. 1997)("where federal claims are dismissed before trial, the district court 'must decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so.'").  See also 28 U.S.C. § 1367(c)(3).  Here, the appropriate considerations do not provide an affirmative justification for retaining supplemental jurisdiction and deciding state law matters.

CONCLUSION

In accordance with the Magistrate Judges Act, 28 U.S.C. §636(b)(1)(B) and (C), and Local Rule 72.1.4 B, the parties are allowed ten (10) days from the date of service to file written objections to this report.  Any party opposing the objections shall have seven (7) days from the date of service of the objections to respond thereto.  Failure to timely file objections may constitute a waiver of any appellate rights.

Respectfully submitted,

/s/  Amy Reynolds Hay
United States Magistrate Judge

Dated:  24 May, 2007

cc:     Honorable Gary L. Lancaster
        United States District Judge

        Frederick H. Banks
         #05711-068
        FCC Yazoo City
        Unit 2AU
        Yazoo City, MS 39194

        All counsel of record by Notice of Electronic Filing